Thank you. Good morning, Your Honors. Carolyn Wiggin from the Federal Public Defender's Office for Mr. Minjarez. And I am going to try to reserve two minutes for rebuttal, if I can. If you could just watch the time, I'll try to help you, but it's your responsibility. I understand. Thank you very much. Your Honors, there are a few basic and fundamental requirements for a fair trial in this country. And in this case, we're looking at a criminal case where a person has been sentenced to spend the remainder of his life in prison without any possibility of parole. So it's especially important that we're sure that the trial he had was a fair trial. And this brings me to the first issue in this case, which is the fact that one of the government's attorneys, Ms. Centeno, testified that she believed Mr. Minjarez had committed a theft offense in the past. This is precisely the type of propensity evidence that both the Supreme Court and this Court have held does not belong in a fair criminal trial. There was an objection at trial to that particular answer, question and answer, and the judge instructed the jury at the time to disregard it, and then repeated that instruction in final jury instructions. And our case law suggests that we should assume that the jury followed those instructions. What overrides that? I think what overrides that in this case is that, as has been recognized, there are certain types of testimony in criminal cases that it is almost humanly impossible for jurors to forget, even if they are instructed by the judge. And the idea that the person who's on trial before them has done a very similar type of offense in the past, I think one of the cases we cite says it's almost beyond the moral capacity of human beings to put that out of their mind, even when so instructed. So we don't think that the judge's instruction to the jury was enough to cure this error. Did you try the case? No, I didn't. It was tried in Fresno by my colleague Eric Kirsten. Was there a motion for mistrial? Yes, he moved for mistrial. First, as he saw that this is where the testimony was headed, he made an objection and asked for a sidebar, and tried to prevent the error from happening. The judge said no, because you, basically the judge said, well, when you cross-examined this witness, you opened the door to the idea that she didn't like your client, Mr. Manharas. Therefore, you've opened the door, I'm going to let the government now get into why she didn't like him. And defense counsel was aware of exactly what her answer was going to be, because he knew that she believed that he had committed a theft in the past. One would suspect the prosecutor did, too. I suspect so. We're not litigating this as prosecutorial misconduct. We're litigating it strictly as an unfair trial. It should have been declared a mistrial. So, anyway, the testimony did come out, and after the testimony came out, defense counsel moved for a mistrial, and that was denied. So, as we have argued in our brief, and I'll just reiterate here, we believe that was an abuse of discretion. I will touch briefly on the second issue, which is the sentencing issue. I just want to be clear that we are not taking on Almendarez-Torres in this case. We understand that that is binding Supreme Court authority, that the fact of a prior conviction can be used to enhance a sentence, even if it hadn't been submitted to a jury. What we're saying is that for the federal three strikes law for robbery, there is more than the fact of a prior conviction that's at issue. We submit that because certain robberies qualify as predicates, others don't, and the question goes to use of a firearm and whether a person was grievously injured or killed. That because there's additional factors are involved in prior convictions under the Federal Three Strikes Act, at least for robbery, that under Apprendi, that question should be submitted to the jury. Apprendi begins from the proposition of a requirement that jury fact finding is necessary to increase the sentence. Do you have any authority for the application of Apprendi for the lowering of a sentence? For the lowering of a sentence. Maybe you can help, maybe you can help me. I was just thinking, I know the Supreme Court just granted cert on something that has to do with mandatory minimums going up. I guess I'm curious as to how this, I might be missing a link in this case. Well, the sort of first step in the Apprendi logic is what does it have to do with? And as I read the Supreme Court opinion in the cases that follow it, what Apprendi has to do, the requirement of jury fact finding is predicated on the notion that the fact in issue, the one that should be submitted to the jury under the Sixth Amendment, is one that would increase the sentence. And it seems to me, correct me if I'm wrong, that what you're arguing here is that Apprendi ought to apply to something that might reduce a sentence. I guess what I'm arguing here is that the way the Federal Three Strikes Law is written, a robbery is a predicate offense unless it didn't involve firearms or threatened use of a firearm or great bodily injury or death. And so although Congress has sort of created this statute in a way that one part encapsulates robbery as a predicate, another part has non-qualifying robberies. I'm saying basically that the robbery has to be more than just a robbery. It has to also have other factors. So I'm considering it, not all robberies are predicate offenses. There has to be more than just the fact of a robbery conviction. You have a case from any circuit that deals with the Three Strikes Law. Anna Apprendi. Well, this court has decided Wilson versus Knowles, which was decided in the habeas context. It should have been in my briefs. That was an error, but that case has to do with California's Three Strikes Law. And in that case, one of the predicate offenses is, I believe, a DUI. And the judge had to make additional findings beyond the fact of a DUI to count that DUI as a strike. And this court held that goes beyond what Apprendi allows. When we're done here, would you supply the courtroom deputy with that citation? I will. Give a copy to your opponent. Yes. I wanted to ask you, you referred to Apprendi, but Apprendi dealt with proceedings in state court under the 14th Amendment. It seems like, I don't want to make the argument for you, the appropriate case here is Jones versus United States. That's the one that implicates the federal proceedings. Is that correct? Correct. And the reason I am asking about this is because your timeline is important with respect to these cases, and or at least as asserted in your briefs. And Jones, I believe, predates Apprendi by about a year, but applies the same rule in federal proceedings under the Fifth Amendment. And so, I'm just trying to figure out if that doesn't belay your point that Apprendi cast doubt on the holding in Kaluna, because Kaluna is a very important case with respect to this issue. Right. Well, in my mind, Apprendi sort of crystallized and clarified Jones to the extent that had the Kaluna court been aware of Apprendi, I think the outcome would have been different or could have been different. And I think it bears reconsideration under the whole line of cases, which I don't think were necessarily as clear at the time Kaluna was decided as they are now. All right, thank you. I'll give you two minutes for your rebuttal. Judge Fletcher, do you have any questions? No, it's perplexing, but I have no questions. Okay, thank you. Good morning. Good morning. May it please the court, my name is Ilana Landoa and I am here on behalf of the United States of America. There are two issues on appeal in this case and it's the government's position that with respect to the first issue, the district court did not abuse its discretion when it denied the defendant's motion for mistrial. Did you try the case? I did, I am one of two counsel. Were you the one asking the question? I was not. Was your colleague? Yes. Did the government know what the answer was? Yes. Then why did you ask it? The government's position is that the defendant- You know what your position is. Did- You knew what the answer was. You knew it had prejudicial value against the defendant in this case, and you went ahead and asked it. The government's position, and in good faith, believed that the jury was entitled to hear the basis- In good faith, you knew the witness was going to describe uncharged misconduct that involved the defendant. Uncharged misconduct that went to that witness's belief and as to why she might have any prejudice against the defendant. What if the reason was that the defendant had sexually abused a 12-year-old? The belief- Would it still be okay? Again, the belief was that the jury is entitled to know the basis of the potential prejudice. What if the witness's answer was, because I think the defendant in this case is a member of Al-Qaeda? Again, that would go to why she might possibly and potentially be prejudiced, and the jury is entitled to- From the government's point of view, it matters not what the response is. It could be the most prejudicial, damaging piece of information in the world, uncharged, untestable, but the government is free to ask the question knowing what the response is. I don't know that it's as open-ended as that, Your Honor, but in this particular instance- Well, give us some boundaries. Tell us when we should establish some boundaries in this area. Well, I think that was for the district court to determine. The government has the absolute right to ask a question like that irrespective of the answer. I think that it would be wise in certain circumstances to have approached the issue if it was so prejudicial with the district court. I don't believe the government thought that this qualified, and in fact, because they were attempting to rehabilitate the witness, thought it was going to show that it was a minor family dispute- The defense asked the cousin, is it? Yes, the cousin of the defendant's wife. Yes. You have a beef with the defendant, right? Correct. Yeah, you don't like him. Yeah, I don't like him. Why not leave it at that? Well, he did go a step further, and he said you believe he caused a rift between you and your cousin- Fine. And the government felt to leave that hanging with the jury if it were something so egregious, Your Honor, as some unjustified prejudice or bias in the case, the jury might be more likely to discredit her testimony. The belief was that by explaining to them the basis for the prejudice or the rift or the possible motive to be biased or to lie against the defendant, that that would show that it did not rise to the level of absurdity like that, and therefore her testimony was credible otherwise. You not only knew what the question was and knew what the answer was, you had an opportunity to think twice about whether to even ask it, because there was a sidebar, right? The sidebar was denied. But there was a sidebar at which you could have said to yourself or your colleague could have said to himself or herself, you know, maybe I shouldn't ask that question. I beg to differ, Your Honor. I'm sorry. The way that it happened was the defendant objected and asked for a sidebar, which was denied. And the district court actually made the ruling that the government was entitled to inquire as to the basis of the rift. So we took that as meaning we had the opportunity. It wasn't an invitation to do whatever. It gave you additional time to think about whether to ask it or not. In retrospect, that's possible. The government's point is that even if that information came in in error, that it did not rise to the level of requiring a mistrial and that the court did not abuse its discretion, it immediately struck the answer. It immediately admonished the jury. It then made a second admonishment where it sort of even pointed out that it was not even a certain prior bad act and that it would be unfair for them and improper for them to consider it. So in light of that and the fact that the other evidence of guilt in this case was overwhelming against the defendant, this does not rise to the level of abuse of discretion for further. You're in the Eastern District? Correct. Your U.S. attorney is in Sacramento? We have Sacramento and Fresno. But the U.S. attorney is in Sacramento. When you go back to Fresno, I want you to call the U.S. attorney and tell him that this former U.S. attorney is offended by what the government did in this case. Deeply offended. You didn't have to do it. I will take that message back, Your Honor. Go ahead. With respect to the other issue, unless there are additional questions as to the mistrial issue, the three strikes... Maybe you could help us on that one. I'll ask the same question I asked your opponent. Have you found any case where any court, anywhere in the Article III system, applied apprendi where the object is to lower a sentence? No. And in fact, our position is apprendi specifically and explicitly exempted prior convictions from the scope of its holding. Numerous other circuits have considered the issue of shifting the burden to the defendant and I take issue with the defendant's notion that these were factors in aggravation. The way the statute is constructed, the fact of the prior conviction for a robbery is sufficient. That's it. Nothing else has to be proven to the government, to the judge in the case. However, what the Congress did and what other circuits have recognized Congress did appropriately was allow an out for the defendant. In other words, provide the defendant with the opportunity to disqualify the prior conviction by showing it didn't involve a weapon or it didn't involve death or serious bodily injury. So other circuits have ruled that the Three Strikes Law has survived apprendi and it's the government's position and we would ask this court to find that as well. You don't think the Jones case applies? I don't and I don't have the case in front of me. I'll tell you a little bit about it because I wrote Jones for the Ninth Circuit and it was a case involving the then recently enacted carjacking statute. And in essence what the statute said was if you carjack and no one is hurt, you get 5 years. If you carjack and someone is kind of hurt, you get 10 years. If you carjack and someone is either killed or seriously injured, you get 25 years. And the opinion that I authored said there's no requirement of going to the jury on this. But Justice Scalia and 6 or 7 of his colleagues disagreed. So what's the difference between that and this? The fact of Jones is that it was in the element of the crime. In the current offense, if I'm understanding you correctly, was there a certain type of injury inflicted and if there were, that would increase the defendant's exposure which is exactly what apprendi disallowed. It wasn't a prior conviction in that case. It was an actual factual finding made by the judge that would increase the statutory maximum and expose the defendant to a higher sentence which is what apprendi was against. So unless the court has any other questions regarding either issue, I'd be happy to answer them. Judge Fletcher, do you have any questions? No. Okay, thank you very much. Thank you. I just will make two brief points. One is on the issue of whether Ms. Centeno was being rehabilitated by this question about why she didn't like Mr. Menjarez. And I think, in fact, that having her testimony which everyone knew, everyone knew all the counsel knew was about to come out that she believed he had committed theft in the past if anything further damaged her credibility because it suggested that she believes he's a thief and probably might have a bias toward assuming that, toward presenting testimony to the jury that backed up her belief that he's basically a thief. So I don't think that she was being rehabilitated at all by that question and answer. And then just on the apprendi question, I just want to point out, and I know we talked about this in the briefing, that apprendi really seems to shatter this idea that there's elements and there's sentencing factors. They sort of say whatever raises your sentence beyond the statutory max must be submitted to the jury. Of course, there is the fact of a predicate exception, but as we've argued, this goes beyond the fact of a predicate. If there are no further questions... I'm fine. Thank you. Thank you. Don't forget the Williams citation. Correct. Thank you for your presentations. The case is now submitted.
judges: Fletcher, Hawkins, Murguia